JOHN FEIST & SONS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 10466.   Promulgated March 22, 1928.

*H. A. Mihills, C. P. A.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

Van Fossan: The petitioner contends that the adjusted debit balances of the stockholders' accounts represent accounts receivable, which should be included in the computation of its invested capital, and that the adjusted debit balance of Charles Feist's account was a debt ascertained to be worthless and charged off within the taxable year, which is deductible from gross income. The respondent urges that the adjusted accounts are not valid accounts receivable which may be included in invested capital, and that the adjusted account of Charles Feist was not in fact a debt ascertained to be worthless within the taxable year and is not deductible from gross income.

Prior to 1916 the petitioner conducted its affairs as if it were a partnership and its property owned by the individual stockholders. Profits and losses were credited and charged to the stockholders, appreciation of corporate assets and contributions by the stockholders were credited to their accounts, and in some instances corporate expenses were charged directly to them. Personal transactions affecting the stockholders only were credited or charged, as the case might be, to their accounts on the company's books. In 1916 the books were audited and the accounts were adjusted and established upon a corporate accounting basis. In December, 1920, another audit of the books and further adjustments of the accounts were made, charging back to the stockholders expenses eliminated from their accounts in 1916 and various items credited to them in prior years. The aggregate amount charged back to the stockholders as due to the company on January 1, 1920, was $37,632.45, of which $15,170.91 was charged to one of the stockholders, who had withdrawn from the business in 1916, and was written off the books as of December 31, 1920, as uncollectible. It is these amounts that the petitioner claims as invested capital and bad debt deduction, respectively.

The fact that stands out most clearly in this record, replete with incoherent and inconsistent testimony, is that the relation of the stockholders to the business always has been that of partners and not merely stockholders of a corporation. Prior to 1916, when these charges were incurred, the corporation as a separate legal entity, which owned the business and property, was ignored. The audits and adjustments of the accounts made in 1916 and 1920 established the books upon a corporate accounting basis, but there is no indication that the stockholders altered their relationship to the company. Subsequent to these audits the business transactions of the company were entered in corporate accounts and not confused with the per-

sonal accounts of the stockholders, but so far as is disclosed the stockholders still were considered the owners of the business and the profits therefrom. Not until December 31, 1920, was there any formal corporate action declaring dividends or otherwise distributing profits or property of the corporation, and the dividend then declared was simply credited to the stockholders' accounts, as profits in prior years had been credited. Payments to the corporation by two of the stockholders between September 1, 1916, and December 31, 1918, were credited to their accounts, just as contributions in prior years were credited, and there is no evidence that such payments were made specifically in recognition or reduction of any debit balance that might have appeared against them. The audits may have established a more accurate system of bookkeeping, but it does not follow that the adjusted debit balances against the stockholders represent valid accounts receivable.

The stockholders treated the business and its assets as their individual property. They contributed capital when required by the business and paid the losses when sustained. Their personal accounts were credited with the profits and contributions and were charged with the withdrawals and losses. There is no evidence that either the corporation or the stockholders considered the charges to their accounts as obligations to the corporation and that payment thereof would be made in cash or other property from independent sources. The stockholders' accounts apparently were maintained only as bookkeeping entries to show the disposition of corporate property and keep the books in balance. There is no evidence of an intention or expectation that the stockholders would pay the debit balances to the company or that they recognized them as debts. The charges against the stockholders' accounts represented distributions of corporate property and not loans or advances to the stockholders.

Under the facts of the case the debit balances against the stockholders, resulting from the adjustments made in 1920, are not valid accounts receivable of the corporation, and can not be allowed as invested capital. *Commonwealth Realty Co.*, 1 B. T. A. 253; *Bradley Miller & Co.*, 1 B. T. A. 941; *Casper Ranger Construction Co.*, 1 B. T. A. 942; *Walle & Co., Ltd.*, 1 B. T. A. 1064; *Feist & Bachrach, Inc.*, 2 B. T. A. 1228; and *Patrick J. Shouvlin*, 3 B. T. A. 499. The evidence does not show that these accounts constitute invested capital under any provision of section 326 (a) of the Revenue Act of 1918. They are not property paid in for stock and there is nothing in the record to indicate that they represent paid-in or earned surplus or undivided profits. (See cases above cited.)

The alleged bad debt in the sum of $15,170.91, for which the petitioner claims a deduction in the taxable year, is one of the accounts

claimed as invested capital, which we have held are not valid accounts receivable. As above indicated, this account was not an obligation or debt of the stockholder to the corporation. In *Luke & Fleming, Inc.*, 1 B. T. A. 12, 14, we said:

To entitle a taxpayer to deduct from gross income, as a bad debt, an item ascertained to be worthless and charged off in a given year, such a debt must have had an existence in fact. A debt which never existed can not be charged off. The right to a deduction arises from the discovery that something which had value has ceased to have it; a debt which never existed had no value to lose.

And in *Federal Fuel Co.*, 3 B. T. A. 814, 816, we said:

If the debtor was not legally liable to the taxpayer, then there was no debt to become worthless.

The circumstances surrounding this particular account demonstrate its nonexistence as a debt, even more clearly than the facts pertaining to the combined accounts which we already have discussed. This account arose from bookkeeping adjustments made more than four years after the alleged debtor had severed all connection with the affairs of the petitioner, and apparently without his knowledge, at least without his acquiescence. The account was merely a bookkeeping adjustment and not a valid account receivable or a debt. It follows that this account is not an allowable deduction as a debt ascertained to be worthless and charged off in the taxable year. It should be added that the account was known to be worthless several years before the taxable year.

We pass without comment other grounds appearing in the record, upon which the claims of petitioner would have to be denied. Among the items charged back to the stockholders, resulting in the alleged accounts receivable, was one for appreciation in the value of plant assets previously credited to the stockholders, which can not be allowed as invested capital. *La Belle Iron Works* v. *United States*, 256 U. S. 377. The evidence pertaining to the other items comprising the alleged accounts receivable is vague and indefinite and wholly insufficient to satisfy the requirements of section 326(a) of the Revenue Act of 1918, which specifically defines invested capital.

Since no issue was raised as to the allowability of the item of $2,261.53 as a bad debt, we do not rule on the propriety thereof.

We find no error in the action of the respondent.

Reviewed by the Board.

*Judgment will be entered for the respondent.*